[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff landlord brings this action for damages allegedly resulting from the defendant tenant's breach of a written, three-year lease for commercial property located at 348 West Main Street in Branford (the "premises"). The defendant used the premises for the operation of a used car business. CT Page 8459
The lease term began on December 1, 1989. The defendant failed to pay the rent due for April, 1990 and succeeding months. In June, 1990, the plaintiff caused the defendant to be served with a notice to quit. On July 27, 1990 the plaintiff obtained judgment against the defendant by default in a summary process action.
When the plaintiff recovered possession of the premises in August, 1990, it found substantial damage to the property, much of which appeared to be intentional. The main electrical panel had been hammered, wires had been cut, bathroom fixtures had been smashed by a 2' x 4', electrical outlets had been twisted, light fixtures had been torn off the ceiling, battery acid had leaked on a retaining wall, many windows were broken and used oil had been poured on the driveway. In addition, 37 junk cars and three oil tanks were left on the premises. The plaintiff spent $8,435.17 to restore the premises to the condition they were in at the outset of the tenancy and to remove the junk cars and trash. The plaintiff claims additional damages of $11,700.00 for rental income lost from April, 1990 through September, 1990. The plaintiff re-let the premises beginning October 1, 1990.
The defendant contended at trial that he was not personally liable under the lease with the plaintiff. This claim, however, is without merit. The lease was originally prepared with "T T Automotive" shown as the tenant. At the time the lease was executed, the defendant requested that the tenant be designated as "T.N.T. Automotive Inc." The landlord agreed. However, the defendant signed the lease personally "Thomas A. Bertino," and didn't cause the corporation "T.N.T. Automotive Inc." to be incorporated until months later. Incorporation papers were prepared on February 22, 1990 but not filed with the Secretary of the State until March 21, 1990. The lease went into default in April, 1990. Moreover, the defendant admitted in his answer that he was the lessee under the lease with the plaintiff. An admission in an answer is a judicial admission which is conclusive on the defendant. Jones Destruction, Inc. v. Upjohn, 161 Conn. 191,199 (1971). Because of the admission and because the corporation did not exist at the time the lease was executed, nor shortly thereafter, the defendant is personally liable under the lease.
In his post-trial brief, the defendant apparently concedes that the premises were vandalized, but argues that he is not liable for the damage because: (1) the damage was caused by some third party; (2) the service of the notice to quit terminated the defendant's obligation under the lease; and (3) the plaintiff failed to mitigate its damages. None of these claims has merit. CT Page 8460
The defendant testified that he discussed his lack of rental payments with a representative of the plaintiff on June 15, before the service of the notice to quit. When no agreement was reached, the defendant alleges that he told this representative that he would be leaving. The defendant testified that he vacated by June 19, taking his tools, cars, alarm system and other personal property, but leaving behind 37 vehicles, none of which was his. He further testified that he returned to the premises twice after vacating to retrieve some of his "customers'" cars. The first time, he retrieved a couple of cars. The second time, around June 26 or 27, the police were on the premises investigating a vandalism complaint and he was not permitted to remove any cars.
The defendant never returned the keys to the premises and never gave the landlord a specific date by which he would vacate. After he did move out, he never notified the landlord that he had relinquished possession and that the premises were therefore unprotected by his alarm system. The plaintiff's witness at trial testified that he thought the defendant was still in possession in June and July because of the number of automobiles still located on the premises. On these facts, the plaintiff acted reasonably in waiting until it had obtained judgment in the summary process matter before asserting its right to possession and beginning the repairs. The plaintiff did not fail to mitigate its damages by not asserting its right to possession before judgment.
Although it is true that service of a notice to quit terminates the lease and therefore relieves the tenant of the obligation to pay rent, Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 384, 388-389 (1989), it does not follow that the tenant is released from all obligations under the lease. The defendant agreed in the lease to return the premises to the plaintiff at the end of the lease term "or sooner termination of this lease" in as good a condition as at the beginning of the lease, reasonable wear and tear excepted. Service of the notice to quit did not absolve the defendant of this obligation, nor did the defendant's alleged vacating of the premises without specific notice to the landlord or surrender of the keys.
A lease is a contract and the landlord is entitled to recover the damages which naturally follow from a breach of the contract. The proper measure of damages, as in any other contract, is that the injured party should be placed in the same position which he would have been in if the contract had been fully performed. Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., supra at 389.
The defendant was obligated under the terms of the lease to maintain and safeguard the premises and to not store junk CT Page 8461 automobiles on the premises. The plaintiff is entitled to recover $8,435.17 in damages, the amount expended by the plaintiff to restore the premises. The plaintiff is further entitled to $11,700. damages as a result of the breach by the defendant of his obligation to pay rent. Judgment is entered for the plaintiff for $20,135.17, plus costs.
VERTEFEUILLE, J.